## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation, LDS FAMILY SERVICES, a Utah Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> FD, an individual, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS** <br><br> Case No. 2:20-cv-507 <br><br> Judge Clark Waddoups |

Before the court are Plaintiffs' Motion to Remand, (ECF No. 19), and Defendant's Motion to Dismiss or Stay, (ECF No. 10). As explained below, the court DENIES Plaintiffs' Motion to Remand, and GRANTS Defendant's Motion to Dismiss.

### **Background**

Procedural Background

On May 27th, 2016, F.D. filed a "Complaint for Personal Injury" in the Navajo Nation District Court of Window Rock, Arizona ("Navajo District Court"). (2:19-cv-62, ECF No. 2-1 at 2.) F.D. brought that Complaint "under Navajo Law . . . ." (2:19-cv-62, ECF No. 2-1 at 2.) "After being served with F.D.'s complaint, Plaintiffs filed an action in this Court requesting that F.D. be enjoined from proceeding with her claims in the Navajo District Court because that court lacked subject-matter jurisdiction." (2:19-cv-62, Compl. ¶ 2, ECF No. 2 at 2.) That case was assigned to

1

United States District Judge Robert J. Shelby, and was given case number 2:16-cv-453.[1] The court refers to this case as "the first federal case."

On November 16, 2016, Judge Shelby entered an order dismissing the first federal case, concluding that "Plaintiffs must exhaust their Tribal Court remedies before seeking relief from this court." (2:16-cv-453, ECF No. 40 at 2.)

Disputed Settlement Agreement

Plaintiffs assert that "[o]n August 1, 2018, Plaintiffs communicated" to F.D.'s former counsel "an offer to settle Defendant's [tribal] claims for a payment of $60,000." (2:19-cv-62, ECF No. 4-1 at 4.) No written record of this offer has been provided to the court.[2]

The next day, on August 2, 2018, one of F.D.'s former attorneys sent an email to Plaintiffs' counsel, writing that F.D. "accepts the $60,000 settlement offer." (2:19-cv-62, ECF No. 4-1 at 15.) On August 3, 2018, F.D.'s former counsel received a letter from attorney David R. Jordan[3] denying any intention by F.D. to settle:

> I am writing this letter to confirm that [F.D.] is not interested in any settlement offers that have been proposed to her, and does not wish to settle at this time. She has retained this firm as substitute counsel, and she would like that transition to occur as soon as possible.

(2:19-cv-62, ECF No. 4-1 at 17.)

According to Plaintiffs, F.D's former counsel forwarded this letter to Plaintiffs' counsel. (2:19-cv-62, ECF No. 4-1 at 5.)

---

[1] Judge Shelby is now the Chief District Judge of the District of Utah.

[2] At oral argument held on October 23, 2020, Plaintiffs' counsel appeared to suggest that he made the offer to F.D.'s former counsel over the phone.

[3] Not to be confused with David J. Jordan, who represents Plaintiffs in this case and all related actions.

On August 17, 2018, Plaintiffs' counsel responded to David R. Jordan asking whether F.D. "intend[ed] to honor the terms of the settlement already reached." (2:19-cv-62, ECF No. 4-1 at 20.) Citing both Utah and New Mexico law, Plaintiffs' counsel wrote that the email from F.D.'s prior counsel accepting the settlement agreement "constitutes a binding, enforceable settlement agreement." (2:19-cv-62, ECF No. 4-1 at 19.) Plaintiffs' counsel also wrote, citing Navajo law, that F.D.'s "acceptance of a settlement agreement and subsequent attempt to renege is contrary to the [Navajo] *Dine'* concept of *k'e*." (2:19-cv-62, ECF No. 4-1 at 20.)

On August 22, 2018, David R. Jordan responded, stating that F.D.'s "prior counsel spoke with her husband, and her husband attempted to settle on her behalf. Her prior counsel never spoke with [her] and [she] never agreed to settle." (2:19-cv-62, ECF No. 4-1 at 23.) In this letter, Mr. Jordan expressed his opinion that resolution of the disputed settlement agreement would be resolved under Navajo Law. Rather than quote the entirety of the letter, the court provides illustrative examples:

- "I commend you for your interest in *k'e* and the implicit acknowledgement that this matter will be resolved by *Diné Bi Beenahaz áanii*."
- "[W]e have little difficulty in concluding that a Navajo court will not support your client in the assertion that a *bilagaana* husband settled this case on behalf of his wife."
- "Navajo law will not enforce a release unless the releasor's intent to settle is 'manifest.' *Clark v. Allen*, 7 Nav. R. 422 (Nav. Sup. Ct. 1999). As noted above, a discussion between counsel and a spouse does not reveal 'manifest' intent to settle."
- "In short, we are confident that Navajo courts will respect the fact that [F.D.] has not agreed to compromise her claim."

(2:19-cv-62, ECF No. 4-1 at 23–25.)

3

First State Suit

Plaintiffs did not attempt to enforce the disputed settlement agreement in the Navajo

District Court.[4] Instead, on October 17, 2018, Plaintiffs filed a "Declaratory Judgment

Complaint" against F.D in the Fourth Judicial District in and for Utah County, State of Utah

("Fourth District Court" or "state court") seeking "a declaration that the settlement entered into

by Plaintiffs and [F.D] on August 2, 2018, is a binding contract and that [F.D] is bound by the

terms of that contract." (2:19-cv-62, ECF No. 4 at 6.) In that Complaint, Plaintiffs alleged that

"[t]he [Fourth District] Court has jurisdiction over this matter pursuant to Utah Code § 78B-3-

205." (2:19-cv-62, ECF No. 4 at 3.) The Plaintiffs apparently rely on the provision that the state

court has jurisdiction over any claim arising out of "the transaction of any business within the

state."

F.D. Confirms that She Will Not Respond to State Complaint

Plaintiffs further assert that "on December 7, 2018, Plaintiffs' counsel spoke with

[F.D.'s] counsel and asked whether Defendant intended to respond the Complaint." (2:19-cv-62,

ECF No. 4-1 at 7.) F.D.'s "counsel stated that Defendant did not intend to respond to the

Complaint." (2:19-cv-62, ECF No. 4-1 at 7.)

Plaintiffs Move for Default Judgment

Plaintiffs obtained a default certificate and moved for default judgment against F.D. on

January 2, 2019. (*See* 2:19-cv-62, ECF No. 4-1 at 2.) In their Motion, Plaintiffs alleged the state

court's personal jurisdiction over F.D., but did not address the state court's subject-matter

---

[4] The court confirmed this fact at the October 23, 2020 hearing.

4

jurisdiction.[5] Regarding the state court's personal jurisdiction over F.D., Plaintiffs argued, in

relevant part:

> This [state] Court has **personal jurisdiction** over [F.D.] because she is a resident
> of Utah. . . . The [state] Court also has personal jurisdiction over [F.D.] pursuant
> to Utah Code § 78B-3-205 because she transacted business in Utah by entering
> into a settlement agreement with Plaintiffs . . . .

(2:19-cv-62, ECF No. 4-1 at 9 (bold added).)

State Court Grants Motion for Default Judgment

On January 7, 2019, the Fourth District Court entered an Order Granting Plaintiffs'

Motion for Default Judgment that provided, in its entirety:

> Before the Court is plaintiffs Corporation of the President of the Church of Jesus
> Christ of Latter-day Saints and LDS Family Services (together, 'Plaintiffs')
> Motion for Default Judgment (the 'Motion') against defendant [F.D.]
> ('Defendant'). The Court, having considered the Motion and being fully advised,
> hereby GRANTS the Motion and declares as follows:
>
> 1. On August 2, 2018, Plaintiffs and Defendant entered into a valid and binding
>    settlement agreement with respect to the claims alleged by Defendant in her
>    complaint filed in the Navajo Nation district court dated May 27, 2016.
>
> 2. Pursuant to the settlement agreement, Defendant is entitled to a payment of
>    $60,000 from Plaintiffs. Upon tender of that sum, Plaintiffs are released from
>    all claims that are or could have been asserted against Plaintiffs in that case.
>
> IT IS SO ORDERED.

(2:19-cv-62, ECF No. 4-2 at 2–3.) As can be seen, the Fourth District Court's Order did not

identify the source of its authority to enforce a settlement agreement arising from claims brought

in Navajo District Court under Navajo law. Nevertheless, the Fourth District Court implicitly

found it had jurisdiction to enter default judgment in favor of Plaintiffs and against F.D. No

---

[5] The Utah Supreme Court has explained that "[s]ubject matter jurisdiction is the authority and competency of the court to decide the case." *State, Dep't of Soc. Servs. v. Vijil*, 784 P.2d 1130, 1132 (Utah 1989). "Personal jurisdiction, on the other hand, is the court's ability to exercise its power over a person for the purposes of adjudicating his or her rights and liabilities." *Id*. "A lack of either is fatal to a court's authority to decide a case with respect to a particular litigant." *Id*.

evidence was presented as to F.D.'s intent to settle or her prior counsel's authority to act on her behalf.

F.D. Rejects Payment

It is undisputed that "[o]n January 11, 2019, Plaintiffs tendered the Settlement Amount to [F.D.]." (ECF No. 1-2 at 3.) Plaintiffs acknowledge that "[F.D.] rejected Plaintiffs' tender." (ECF No. 1-2 at 3.) "On January 14, 2019, Plaintiffs received in the mail the check Plaintiffs sent to [F.D.] with the word 'VOID' written on the check." (ECF No. 1-2 at 3.)

Second Federal Case

On January 28, 2019, the Plaintiffs filed a second federal action.[6] (2:19-cv-62, ECF No. 2.) That case was assigned to the undersigned. Plaintiffs sought judgment from this court "declaring that the Navajo District Court lacks subject-matter jurisdiction over [F.D.'s] claims and that [F.D's] claims are moot." (2:19-cv-62 ECF No. 2 at 4.) First, Plaintiffs argued that "[t]he Navajo District Court lacks subject matter jurisdiction over [F.D's] claims because Plaintiffs are nonmembers of the Navajo Tribe and [F.D.'s] claims did not arise from conduct on the Navajo Nation." (2:19-cv-62, ECF No. 2 at 4.) Second, they argued that F.D's "claims pending in the Navajo District Court are moot because they have been settled and released." (2:19-cv-62, ECF No. 2 at 4.)

Regarding the first argument, the court held that because Plaintiffs had not exhausted their tribal remedies, considerations of comity required this court to abstain from hearing Plaintiffs' challenge to the Navajo District Court's subject matter jurisdiction over F.D's claims. (*See* 2:19-cv-62, ECF No. 45 at 12–13.)

---

[6] F.D. is identified as B.N. in the second federal case, but it is undisputed that F.D. is the same individual sued here.

Regarding the second argument, Plaintiffs had argued that "[t]he Fourth District Court's ruling" finding a valid settlement agreement had "preclusive effect in this [federal] Court" by virtue of the full faith and credit statute, 28 U.S.C. § 1738. (*See* 2:19-cv-62, ECF No. 23 at 30 (citations omitted).) Based on Plaintiffs' reliance on the full faith and credit statute, this court rejected the argument that the state default judgment order divested the Navajo District Court of jurisdiction. (*See* 2:19-cv-62, ECF No. 45 at 21 ("But 'full faith and credit comprises the law of issue and claim preclusion and '*is not a jurisdictional matter*.'" (emphasis in original) (citation omitted)).

This court found that "[b]ecause the state court judgment relates to an issue of preclusion—and not a lack of subject matter jurisdiction by virtue of mootness—this court concludes that relief related to the state court judgment must be made either in the state court or in the tribal court." (2:19-cv-62, ECF No. 45 at 21–22.) The court reasoned that if it "were to grant Plaintiffs the relief they seek—and enjoin BN from proceeding in tribal court—the tribal court would be deprived of an opportunity to determine for itself what effect to give the state court judgment." (2:19-cv-62, ECF No. 45 at 22.) The court then stayed the case until Plaintiffs had exhausted their tribal court remedies. (2:19-cv-62, ECF No. 45 at 23.) The tribal court action is still pending in the tribal courts.

Second State Suit

On December 13, 2019, Plaintiffs filed a second Complaint against F.D. in the Fourth District Court, seeking an order enjoining F.D. (*See* ECF No. 1-2.) Plaintiffs sought an order enjoining F.D., and anyone on her behalf "from proceeding with [her] claims against Plaintiffs *in the Navajo court action . . . .*" (ECF No. 1-2 at 6 (emphasis added).) Plaintiffs also sought "a

judgment declaring that Plaintiffs have been released from any claims that Defendant asserted or could have asserted against them in the Navajo court action." (ECF No. 1-2 at 6.)

F.D. Removes Second State Action to this Court

On July 15, 2019, F.D. removed Plaintiffs' second state Complaint to this court, arguing that there was federal question jurisdiction. F.D. argued that Plaintiffs seek "to use state courts to disrupt the tribal court process through injunctive relief," and argued that this creates "an unavoidable dispute about how that impacts tribal sovereignty." (ECF No. 1 at 6–7.)

**Analysis**

Plaintiffs' Motion to Remand raises a question of judicial power: whether the Fourth District Court has the authority to enforce a disputed settlement agreement—to resolve claims brought by a Navajo, in Navajo District Court, under Navajo law—when the Fourth District Court is not the court of the original action and when the action is still pending in the Navajo District Court. As explained below, because the state court has already implicitly determined that it has such authority, and because that exercise of jurisdiction interferes with tribal sovereignty and self-government, this court holds that the state court is divested of subject matter jurisdiction over Plaintiffs' claims as a matter of federal law.

The court proceeds in five steps. First, this court discusses relevant federal and Utah precedent related to the enforcement of settlement agreements. Second, the court discusses certain principles of Federal Indian Law confirming the status of Indian Tribes as quasi-sovereign nations. Third, the court discusses relevant precedent related to foreign antisuit injunctions because that topic provides a helpful analogy to this case. Fourth, the court explains why this case arises under federal law, and why it denies Plaintiffs' Motion to Remand. Fifth, the court explains why it dismisses this case.

I.      Enforcement of Settlement Agreements

As discussed above, when the Fourth District Court granted Plaintiffs' Motion for Entry of Default Judgment, it did not identify or discuss the source of its authority to enforce a disputed settlement agreement arising from claims brought by a Navajo, in Navajo District Court, under Navajo law.

To resolve Plaintiffs' Motion to Remand, this court finds it helpful to review precedent relating to the enforcement of settlement agreements. The court discusses (A) federal courts' subject-matter jurisdiction to enforce settlement agreements after dismissal of the complaint; (B) federal authorities discussing the source of a court's authority to enforce a settlement agreement prior to dismissal; and (C) Utah Supreme Court precedent supporting the proposition that a motion to enforce a settlement agreement is properly filed in the court of the original action.

A.  *Kokkonen*

In *Kokkonen v. Guardian Life Ins. Co. Of Am.,* 511 U.S. 375 (1994), "the United States Supreme Court . . . extensively addressed the circumstances under which a federal court has jurisdiction to enforce a settlement agreement." *Nelson v. Pennsylvania*, 125 F. App'x 380, 381 (3d Cir. 2005). In *Kokkonen*, the plaintiff originally brought "various state-law claims" in California state court. *Kokkonen*, 511 U.S. at 376. The defendant removed to federal court "on the basis of diversity jurisdiction." *Id*. The case proceeded to trial in federal court. *See id*. Before the jury rendered a verdict, "the parties arrived at an oral agreement settling all claims and counterclaims, the substance of which they recited, on the record, before the District Judge in chambers." *Id*. "[T]he parties executed a Stipulation and Order of Dismissal with Prejudice," which the District Judge entered—"dismissing the complaint and cross-complaint." *Id*. at 377.

After the district court had dismissed the complaint and cross-complaint, the parties had a dispute about the plaintiff's obligations under the settlement agreement. *Id*. The issue was whether the federal district court had subject matter jurisdiction to enforce the settlement agreement after it had dismissed the complaint. *See id*. Before answering that question, the Supreme Court noted that "[e]nforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence *requires its own basis for jurisdiction*." *Kokkonen*, 511 U.S. at 378 (emphasis added).

Because the district court's dismissal order did not (1) contain a provision indicating that it would retain jurisdiction in the event of a dispute, nor (2) incorporate the terms of the settlement agreement—the Supreme Court held that the district court lacked subject matter jurisdiction to enforce the settlement agreement. *See id*. at 381–82 ("we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract if the parties agree. Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

B.   <u>Federal Case Law</u>

As discussed above, the federal district court in *Kokkonen* lacked subject-matter jurisdiction to enforce a disputed settlement agreement after it had dismissed the complaint. But the Supreme Court in *Kokkonen* did not discuss the source of a court's authority to enter a settlement agreement *prior* to dismissal. Nor did *Kokkonen* discuss the possibility that litigants might dispute the existence of a valid settlement agreement prior to dismissal.

Generally, "'[a] trial court has the power to summarily enforce a settlement agreement entered into by the litigants *while the litigation is pending before it*.'" *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (emphasis added) (quoting *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). This authority does not arise under any rule of civil procedure, "but under the trial court's inherent equitable power . . . to enforce a settlement agreement when the practical effect is merely to enter a judgment by consent." *See Millner v. Norfolk & W. R. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981); *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976) ("It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them."); *see also Kukla v. Nat'l Distillers Prod. Co.*, 483 F.2d 619, 621 (6th Cir. 1973) ("We initially note that the authority for a District Court's entry of final judgment incorporating the terms of a pre-trial settlement agreement rests under neither Rule 56 nor Rule 16. Rather, such a judgment 'is in the nature of a judgment by consent,' authorized under what has been consistently recognized as the trial court's 'inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case.'" (citations omitted)).

It is thus well established that a trial court's power to enforce a settlement agreement entered into by the litigants while litigation is pending before it is based on the court's inherent authority. But if the litigants do not agree that a valid settlement agreement exists, a trial court should, if needed, conduct an evidentiary hearing to resolve the dispute. *See Hardage*, 982 F.2d at 1496 ("the majority of our sister circuits agree that where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."). In *Hardage* the Tenth Circuit cited seven cases to support the proposition that this was the prevailing view among the federal circuit courts. *See id*.

In two of the seven cases, a federal circuit court held that the federal district court had properly held an evidentiary hearing to resolve a disputed settlement agreement.[7] In three of the seven cases, a federal circuit court remanded to the federal district court to conduct an evidentiary hearing to resolve a disputed settlement agreement.[8] In two of the seven cases, a federal circuit court held that a federal district court's summary enforcement of a settlement agreement without an evidentiary hearing was proper because the existence of a settlement agreement could not reasonably be challenged.[9]

The holdings of the seven cases cited by the Tenth Circuit in *Hardage* were not uniform. But an underlying assumption of each case was that an evidentiary hearing to resolve a disputed settlement agreement, if needed, would be conducted by the federal district court—the court of the original action. This is consistent with the prevailing view among federal courts: "[a] motion to enforce a settlement agreement is properly directed to the court in which the original action is

---

[7] [1] *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 153 (6th Cir. 1992) ("The trial court held a properly conducted evidentiary hearing, affording both parties the opportunity to be heard. Thus, the trial court did what was required of it and appellant's complaint here is without merit."); [2] *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 708 (9th Cir. 1989) ("In his order denying reconsideration, the judge persuasively reasoned: 'Raymark did in fact receive an evidentiary hearing on the issue of formation of the settlement agreement.'").

[8] [1] *Tiernan v. Devoe*, 923 F.2d 1024, 1027 (3d Cir. 1991) ("This case involves a challenge to an order of the district court granting summary enforcement of several settlement agreements. Although we recognize the difficulties faced by the district judge in this confusing matter, we will vacate the order and remand to the district court for a determination of the validity of the settlements."); [2] *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 392 (5th Cir. 1984) ("Accordingly, our remand is for the narrow purpose of providing OKC with an evidentiary hearing in which OKC will have the burden of proof . . . on the factual question of whether Sawyer did not actually have authority to settle the case."); [3] *Autera v. Robinson*, 419 F.2d 1197, 1203 (D.C. Cir. 1969) ("The parties on both sides of appellants' lawsuit had valuable interests at stake in the motion proceeding entertained by the District Court. To the extent that their several representations to the court left issues of fact for determination, they are entitled to an evidentiary hearing. The judgment appealed from is accordingly reversed, and the case is remanded to the District Court for proceedings not inconsistent with this opinion.").

[9] [1] *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988) ("Although summary enforcement is inappropriate when there is a material dispute about the existence of a settlement agreement or the authority of an attorney to enter a settlement agreement on behalf of his client . . .  Petty's effort to bring his case within that context is thoroughly unpersuasive."); [2] *Gatz v. Sw. Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988) ("We conclude that summary enforcement of the settlement agreement was proper because the agreement was clear and unambiguous and there were no substantial factual issues to be resolved by an evidentiary hearing.").

pending." *Crumpacker v. Farrell*, 516 F. Supp. 276, 281 n. 9 (N.D. Ind. 1981); *see also Beirne v. Fitch Sanitarium, Inc.*, 167 F. Supp. 652, 654 (S.D.N.Y. 1958) ("Generally, a settlement agreement may be enforced by motion in the original action.").

To summarize, the prevailing view among federal courts is that a trial court's power to enforce a settlement agreement prior to dismissal is rooted in its inherent authority. If a dispute over the validity of a settlement agreement arises prior to dismissal, the court in which the original action is pending should hold an evidentiary hearing.

C.  Utah Law

Utah law also appears to require a motion to enforce a settlement agreement to be brought in the court of the original action. Like the Tenth Circuit, the Utah Supreme Court has recognized that "[i]t is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants *while the litigation is pending before it*." *Tracy-Collins Bank & Tr. Co. v. Travelstead*, 592 P.2d 605, 609 (Utah 1979) (emphasis added). The Utah Supreme Court's statements in *Tracy-Collins* suggest that this authority is limited to situations where the trial court is "the court of the original action." *See id*. at 607 ("It is quite well established that a settlement agreement may be summarily enforced by motion *in the court of the original action*." (emphasis added).)

In *Tracy-Collins*, the Utah Supreme Court approvingly cited *Melnick v. Binenstock*, a case from the Supreme Court of Pennsylvania. *See id*. In *Melnick*, the Supreme Court of Pennsylvania provided, in relevant part:

> Where the right of one of the parties to such an agreement compromising pending litigation is contested, the true interpretation of the agreement should be found by the court in which the litigation was pending, or, if in equity, within the terms of the decree entered in accordance with the compromise. *A party seeking to enforce an agreement compromising pending litigation is not at liberty to institute in any court any action he sees fit*; especially is this true as here, where the agreement

13

> has been in part performed. A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effected; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus.

*Melnick v. Binenstock*, 318 Pa. 533, 536, 179 A. 77, 78 (1935) (emphasis added). The Utah Supreme Court's reliance on *Melnick* suggests that it would agree that "[a] party seeking to enforce [a settlement agreement resolving] pending litigation is not at liberty to institute in any court any action he sees fit."

II.    <u>Relevant Principles of Federal Indian Law</u>

The Supreme Court has recognized that Indian "tribes remain quasi-sovereign nations . . . ." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 71 (1978) "Although no longer 'possessed of the full attributes of sovereignty,' they remain a 'separate people, with the power of regulating their internal and social relations.'" *Id*. (citations omitted). "They have power to make their own substantive law in internal matters, and to enforce that law in their own forums." *Id*. (citations omitted).

Congress, too, has "extraordinarily broad" "authority over Indian matters." *See id*. at 72. Accordingly, "tribal sovereignty is dependent on, and subordinate to, only the Federal Government, **not the States**." *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 154 (1980) (bold added). "[W]hen Congress has wished the States to exercise" power to assume jurisdiction over Indian affairs that take place on the Indian reservation, "it has expressly granted them th[is] jurisdiction . . . ." *Williams v. Lee*, 358 U.S. 217, 221 (1959). Importantly, "[i]f state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9,

15 (1987). There is no claim in this case that any federal statute would vest jurisdiction in the state court to resolve the disputed settlement agreement.

III.    Foreign Antisuit Injunctions as a Helpful Analogy

Plaintiffs filed their Complaint in the Fourth District Court seeking "an order enjoining [F.D.] . . . from proceeding with [her] claims against Plaintiffs in the Navajo court action." (ECF No. 1-2 at 6.) What Plaintiffs seek may be described as an "antisuit injunction."

An antisuit injunction does not "work[] directly on [a] collateral forum." § 10:42.Antisuit injunctions—Generally, 3 Newberg on Class Actions § 10:42 (5th ed.). Instead, "an antisuit injunction enjoins a litigating *party* presently before the enjoining court from litigating elsewhere." *Id.* (emphasis in original). Plaintiffs insist that their "requested relief would apply only to F.D." and argue that they do not seek to "enjoin the Navajo court or dictate its proceedings." (ECF No. 19 at 15.) But an examination of caselaw related to the authority of federal courts to enjoin individuals from proceeding in foreign courts reveals that an antisuit injunction does restrict a foreign sovereign's court.

"Where two [sovereigns] have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each [sovereign] is required by international law to consider" certain factors relating to comity. *See United States v. Davis*, 767 F.2d 1025, 1034 (2d Cir. 1985); *see id.* at 1036 ("Because the United States and the Cayman Islands had concurrent jurisdiction to prescribe, we must determine whether, having due regard to principles of international comity, the District Court properly exercised its power" to enjoin a criminal defendant from pursuing litigation before a Cayman Island court.). Where a United States federal district court has such jurisdiction, "it is well-settled that [it] has the power to enjoin a party before it from pursuing litigation before a foreign tribunal . . . ." *Id.* at 1038.

But, relevant here, "such an order often effectively restricts the jurisdiction of the foreign tribunal and should be used sparingly." *Id.* "Indeed, because an order enjoining a litigant from continuing a foreign action is facially obstructive, international comity demands that this extraordinary remedy be used only after other means of redressing the injury sought to be avoided have been explored." *Id.* International comity requires this extraordinary remedy to be used sparingly because "sovereign states . . . have a substantial interest in regulating the progress of litigation in [their] own courts." *See id.*

Plaintiffs are technically correct that an order from the state court enjoining F.D. from proceeding with her claims in tribal court would not work directly on the Navajo District Court. But they ignore that the Navajo District Court, as a quasi-sovereign has "a substantial interest in regulating the progress of litigation in its own courts." *C.f. Davis*, 767 F.2d at 1038. And they ignore that the order they seek from the state court would "effectively restrict[] the jurisdiction of" the Navajo District Court. Further, Plaintiffs' argument presupposes that the state court has the authority to enjoin F.D. from proceeding in tribal court. As explained below, the state court lacks this authority.

IV.    Plaintiffs' Right to Relief Depends on Resolution of a Substantial Question of Federal Law

Plaintiffs argue that their "Complaint has two causes of action," "declaratory judgment and breach of contract," and argue that "[b]oth claims arise under Utah state law and do not require resolution of any federal issues." (ECF No. 19 at 13.) Plaintiffs also argue that their "right to relief does not depend on resolution of a substantial question of federal law." (ECF No. 19 at 15.)

Federal-question jurisdiction exists for all claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'arises under' federal law under two

circumstances: [1] 'a well-pleaded complaint establishes either that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012) (citation omitted).

The second of these circumstances is, admittedly, a "less frequently encountered variety of federal 'arising under' jurisdiction . . . ." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Nevertheless, the Supreme Court has "recognized for [more than] 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id*. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id*.

Plaintiffs' right to relief necessarily depends on two things. First, Plaintiffs' relief depends on the state court having the authority to decide the case and enforce a disputed settlement agreement resolving claims brought by a Navajo, in Navajo District Court, under Navajo law. Second, even assuming the state court possesses this authority, Plaintiffs would only be entitled to the relief they seek if an order enjoining F.D. would not interfere with tribal sovereignty. Both of these questions implicate significant federal issues that not only warrant federal jurisdiction in this case, but demand it.

A. <u>The Fourth District Court Lacks the Authority to Enforce the Disputed Settlement Agreement</u>

As discussed above, courts possess inherent authority to enforce a settlement agreement prior to dismissal *when they are the court of the original action*. Here, the Navajo District Court is the court of the original action—not the state court. This court is persuaded that enforcement

of the disputed settlement agreement at issue "requires its own basis for jurisdiction." *C.f.*

*Kokkonen*, 511 U.S. at 378. But the court is aware of no authority—and Plaintiffs have presented

none—that suggests that a state court has the power to enforce a disputed settlement agreement

resolving claims brought by a tribal member, under tribal law, in tribal court, when the tribal

court has never dismissed the tribal complaint.

The state court already implicitly decided that it has the authority to decide the case when

it granted Plaintiffs' Motion for Entry of Default Judgment.[10] The state court held that "[u]pon

tender of [$60,000], Plaintiffs are released from all claims that are or could have been asserted

against Plaintiffs in" F.D.'s tribal suit. (ECF No. 4-2 at 3.) It is well established that "when entry

of a default judgment is sought against a party who has failed to plead or otherwise defend, the

[trial] court has an affirmative duty to look into its jurisdiction both over the subject matter and

the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). By entering the

Order granting Plaintiffs' Motion for Default Judgment, the state court already determined that it

has subject matter jurisdiction to enforce a settlement agreement resolving ongoing claims in

tribal court—despite the fact that the state court was not "the court of the original action." *Tracy-*

*Collins Bank & Tr. Co. v. Travelstead*, 592 P.2d 605, 607 (Utah 1979).

Because the state court has already determined that it possesses this authority, the issue is

ripe for federal review.[11] "The allocation of sovereign authority among the federal government,

the states, and tribes is ordinarily a matter of federal law." *Becker v. Ute Indian Tribe of the*

*Uintah & Ouray Reservation*, 868 F.3d 1199, 1203 (10th Cir. 2017). Whether the state court

---

[10] F.D.'s default has no effect if the Fourth District Court lacked subject matter jurisdiction. F.D. was not required to respond to an action before a court lacking jurisdiction, although such a challenge would have been prudent and aided in the resolution of the dispute.

[11] "In order for a claim to be justiciable under Article III, it must present a live controversy, ripe for determination, advanced in a 'clean-cut and concrete form.'" *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir.).

possesses subject-matter jurisdiction to enjoin F.D. from pursuing her claims in tribal court is an issue that relates directly to the allocation of authority between the state of Utah and the Navajo Nation and is therefore a matter of federal law.

"This court has the unique authority to determine jurisdiction between the State and the Tribe." *Ute Indian Tribe of Uintah & Ouray Reservation v. Lawrence*, No. 2:16-CV-00579, 2018 WL 941720, at *2 (D. Utah Feb. 17, 2018). This court holds, as a matter of federal law, that the Navajo District Court possesses the exclusive authority to resolve the disputed settlement agreement between F.D. and Plaintiffs.[12] This is because the action is still pending in the Navajo District Court, that court never dismissed F.D.'s Complaint, and because the Navajo District Court's "inherent equitable power" to enforce the settlement agreement, *Millner*, 643 F.2d at 1009, is rooted in its exclusive status as the "court of the original action." *Tracy-Collins*, 592 P.2d at 609. A motion to enforce the settlement agreement may be brought in the Navajo District Court—and no other.[13]

B.  Even if the State Court has the Authority to Enforce a Disputed Settlement Agreement Resolving Tribal Claims, That Action Would Interfere with Tribal Sovereignty

As discussed above, the court holds that the Navajo District Court, as the court of the original action, possesses the exclusive authority to resolve the disputed settlement agreement.

---

[12] To be clear, this court makes no judgment as to whether the tribal court has subject matter jurisdiction over F.D.'s underlying tribal claims. This case's companion case, 2:19-cv-62, is currently stayed pending Plaintiffs' exhaustion of their tribal remedies. The court dismisses Plaintiffs' Complaint in this case—2:20-cv-507. But this dismissal has no effect on 2:19-cv-62. That case remains stayed. Here, the court only holds that the Navajo District Court, as the court of the original action, has the exclusive authority to resolve the disputed settlement agreement.

[13] Plaintiffs emphasize that this court previously provided that "[b]ecause the state court judgment relates to an issue of preclusion—and not a lack of subject matter jurisdiction by virtue of mootness—this court concludes that relief related to the state court judgment must be made either in the state court or in the tribal court." (ECF No. 45 at 21–22.) Pointing to this statement, Plaintiffs argue that this court already "tacitly recognized" that this "issue may be resolved in state court without deciding any federal questions." (ECF No. 19 at 7–8.) Plaintiffs misunderstand the court's previous statement. The court simply meant to convey to the parties that this court—the federal court—was not the proper forum to seek enforcement of the state court judgment. Upon further review, and with the benefit of further briefing, this court concludes that the Navajo District Court has the exclusive authority to resolve the disputed settlement agreement.

And, as discussed above, Plaintiffs have not identified the source of the state court's authority to grant the relief they seek. But even if they could, the state court would be divested of this authority as a matter of federal law.

"If state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987). Indian tribes possess the "power to make their own substantive law in internal matters, and to enforce that law in their own forums." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 71 (1978). F.D. argues that "[s]ettlement of Navajo court cases are guided by Navajo customary practices, which are deeply rooted in Navajo culture and self-governance." (ECF No. 32 at 20.) In support of her argument, she cites to the Navajo Nation Supreme Court's commentary on Navajo Rule of Civil Procedure 16(a), which provides, in part:

> The development of our court system plainly imposes a duty on our Navajo Nation judges to use Diné methods of informal discussion whenever permissible, primarily to aid horizontal decision-making by the parties themselves. . . . [T]he Supreme Court has determined that Rule 16(a) clearly provides a window for a court to informally proceed using Diné methods of dispute resolution to facilitate settlement, during which the court is not constrained by rule-based formalities.

(ECF No. 32 at 20 n. 2.) Based on F.D.'s citation to this commentary, the court is persuaded that resolution of a disputed settlement agreement under Navajo Law is likely very different than Utah law.

The Navajo Nation possesses the power "to make [its] own substantive law in internal matters, and to enforce that law in [its] own forums." *Santa Clara Pueblo* 436 U.S. at 71. If the state court were to enforce the settlement agreement, the Navajo Nation would be deprived of an opportunity to apply Navajo law to resolve a disputed settlement agreement resolving ongoing claims brought by a Navajo, in Navajo District Court, under Navajo law. This would interfere

with the Navajo Nation's tribal sovereignty and self-government because the Navajo Nation, as a quasi-sovereign, has a substantial interest in regulating the progress of litigation in its own courts. *C.f.*, *United States v. Davis*, 767 F.2d 1025, 1038 (2d Cir. 1985) ("all sovereign states," have "a substantial interest in regulating the progress of litigation in its own courts."). Because the Fourth District Court has already determined that it has the authority to resolve the disputed settlement agreement, and because further state action enjoining F.D. would interfere with the Navajo Nation's tribal sovereignty, this court holds that the state court is "divested of jurisdiction as a matter of federal law," *Iowa Mut. Ins. Co.*, 480 U.S. at 15, to enforce the settlement agreement.

V.      This Case is Dismissed

As discussed above, this court holds, as a matter of federal law, that the Navajo District Court possesses the exclusive authority to resolve the disputed settlement agreement between F.D. and Plaintiffs. The Fourth District Court therefore lacks subject matter jurisdiction to enforce the disputed settlement agreement. Because Plaintiffs' Complaint in this case—2:20-cv-507—depends on relief that the state court does not have the authority to grant, this case is dismissed without prejudice as to the Plaintiffs' ability to pursue their claims and defenses in the Navajo District Court.  F.D.'s Motion to Dismiss, (ECF No. 10), is GRANTED.

This case's companion case—2:19-cv-62—remains stayed. The court reiterates that it makes no judgment as to whether the tribal court has subject matter jurisdiction over F.D.'s underlying tribal claims.

**Conclusion**

I.   Plaintiffs' Motion to Remand, (ECF No. 19), is DENIED.

II.  Defendant's Motion to Dismiss, (ECF No. 10), is GRANTED.

IT IS SO ORDERED.

Dated this 2nd day of November, 2020.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge